IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL AND VICINITY, and CATHERINE WENSKUS, Assistant Administrator of the Funds, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.   16 C 06885 |
| v. | ) ) ) | Judge Robert W. Gettleman |
| R & W CLARK CONSTRUCTION INC., and RICHARD W. CLARK, doing business as R & W Clark Construction, Inc. | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), and Catherine Wenskus, Administrator of the Funds, brought a three count complaint against R & W Clark Construction, Inc. ("R& W Clark" or "Company") and Richard Clark ("Clark"), alleging failure to pay benefit contributions in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(g)(2) (Count I), failure to collect union dues in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a) (Count II), and fraud against defendant Richard Clark (Count III).   Plaintiffs have moved for summary judgment for the first two counts.   (Doc. 102).   For the reasons stated below, plaintiffs' motion is granted.

**Background**

The Funds receive contributions from numerous employers pursuant to collective bargaining agreements entered into between employers and the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). The Funds thus constitute multiemployer benefit plans, as defined by Section 3(3) and Section 3(37) of ERISA, 29 U.S.C. § 1002(3) and 37(A). Defendant R & W Clark is a concrete subcontractor and, since 1989, a signatory to a collective bargaining agreement ("CBA") with the Union. As a signatory to the CBA, R & W Clark agreed to contribute to the Funds. To ensure the Company made these contributions, the CBA required the Company to maintain robust payroll records. These records are key because employers self-report their required contributions to the Funds. The system requires employers to submit monthly reports that include all hours worked by covered employees and the amounts owed. The relevant agreements provide authority for the Funds to audit the books and records of a participating employer whenever an employer fails to comply with contributions or monthly reporting.

After R & W Clark failed to make contributions in October 2014, the Funds audited the company's records—or, at least, attempted an audit. Defendants did not have a payroll checking account and did not maintain timecards or other records of employees' daily hours. Defendant Clark testified that employees work the same eight hours each day and that he kept a record of when employees failed to show up. Clark further testified that on occasion employees would receive checks that were non-sufficient funds ("NSF"), and R & W Clark did not keep any records tracking which payments reimbursed employees for an NSF paycheck. Employees received payments in a hodgepodge of cash, checks, or money orders, often less than the full

2

amount of wages owed. Defendants' lack of records presented the auditors with several challenges. Nevertheless, the auditors completed an audit report for the period of October 1, 2014 through December 31, 2018.

Plaintiffs seek summary judgment against defendant R & W Clark, and partial summary judgment against defendant Clark, the company's sole shareholder and sole proprietor. Plaintiffs argue that individual liability is appropriate because Clark is the alter-ego of the company. During the relevant audit period, R & W Clark was dissolved as a corporate entity but continued to operate by its owner, defendant Clark. Plaintiffs further claim that R & W Clark was not and is not sufficiently capitalized, and that Clark commingled his personal funds with the company's assets.

## Discussion

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013). However, it is not the role of the court to scour the record in search of evidence to defeat a motion for summary judgement; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. Harney v. Speedway SuperAmerica, LLC, 526 F.3d 1099, 1104 (7th Cir. 2008). The party opposing summary judgement "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

3

ERISA requires employers to maintain records for their employees "sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a)(1); see also 29 U.S.C. § 1027 (requiring retention of such records for at least six years). "The records must be contemporaneous time records that reflect the type of work performed, and the work location." Trustees of Chi. Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering Inc., 2019 WL 2208351, at *4 (N.D. Ill. May 22, 2019) (citing Sullivan v. Tag Plumbing Co., 2012 WL 3835526, at *5 (N.D. Ill. Sept. 4, 2012)); see also Laborers' Pension Fund v. RES Envtl. Servs., Inc., 377 F.3d 735, 739 (7th Cir. 2004).

ERISA obliges benefit plan fiduciaries like the plaintiffs to "hold employers to the full and prompt fulfillment of their contribution obligations." Michels Corp. v. Cent. States, Se. & Sw. Areas Pension Fund, 800 F.3d 411, 418 (7th Cir. 2015). "One risk that fiduciaries must consider is that employers will maintain shoddy or nonexistent records, fail to make required contributions and then when the fiduciary comes knocking, rely on the absence of records to claim that nothing is owed." Pipe Fitter's Retirement Fund, Local 597 v. J & B Mechanical, Inc., 2018 WL 3819112, at *2 (N.D. Ill. Aug. 11, 2018). But "an employer cannot escape liability 'by hiding behind his failure to keep records as statutorily required.'" Cent. Ill. Carpenters Health & Welfare Tr. Fund v. Struben, 2009 WL 497393, at *11 (C.D. Ill. Feb. 24, 2009) (quoting Brick Masons Pension Tr. v. Indus. Fence & Supply Inc., 839 F.2d 1333, 1338 (9th Cir. 1988)). Thus, if a fund shows an employer's records are deficient and "produces an apparently sound accounting suggesting that money is owed," the court applies a presumption in the fund's favor, unless the employer presents rebutting evidence. Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co., 347 F.3d 262, 264-65 (7th Cir. 2003) (further

stating: "in the absence of an explanation by the employer, the fund would prevail on summary judgement").

Here, there is no dispute that the defendants clearly violated ERISA's record keeping provisions. Defendants failed to maintain contemporaneous daily time records and failed to keep wage payment information. There is no dispute that defendants' remittance reporting and records fail to identify the benefits due or which became due to employees. Defendants thus violated their statutory obligation and defendants' records are clearly deficient.

Despite defendants' poor recording-keeping practices, the Funds are entitled to summary judgment because they have presented an "apparently sound accounting." The auditors reviewed payroll documents, quarterly federal and state tax return disbursements, remittance reports from other multi-employer funds, cancelled checks and bank statements. Defendants make several arguments in an attempt to rebut plaintiffs' accounting, but none are persuasive. Defendants first argue that audits conducted by other funds "yielded drastically different results." This argument is irrelevant because other audits, conducted over different time periods and for different employees, have no bearing on the instant suit.

Defendants next argue that certain contribution amounts included in the audit report were in fact paid. However, defendants make this argument generally, without providing specific evidence as to which employees' hours were paid or which contribution amounts were paid. General statements are insufficient to rebut plaintiffs' proffered accounting. Defendants further imply that third parties paid some of the contributions for defendants but provide no evidence to support that conclusion. Finally, defendants argue that their tax returns demonstrate that plaintiffs' audit is incorrect, but the auditors relied on defendants' tax returns when compiling

5

their report.   Producing tax records without identifying how those tax records impeach the audit does not defeat plaintiffs' motion.   Consequently, defendants have failed to rebut the accounting provided by the auditors.

Plaintiffs next contend that defendant Clark is personally liable for corporate debt incurred during the time that the corporation was dissolved, and that Clark is the alter-ego of the company.   Defendants present no argument in response, and the court agrees with plaintiffs.   In Illinois, an individual owner or operator of a former corporate entity is contractually obligated for debt incurred during the time that the corporation operated while it was dissolved.   Plepel's Estate v. Industrial Metals, Inc., 115 Ill.App.3d 803, 807 (1st Dist. 1983); see also Laborers' Pension Fund v. Nationwide Environmental, 2011 WL 10755892, at *2 (N.D. Ill. Mar. 16, 2011).   The company was a dissolved corporation from October 1, 2014 to February 10, 2015, and again for a few months in 2019.   Because Clark continued operations while the Company was dissolved, Clark is personally liable for debt incurred during those periods of time.

Clark is additionally liable because he was the alter-ego of the Company.   Plaintiffs have demonstrated that there is "such unity of interest and ownership between the individual or entity and the corporation that the separate personalities of the corporation and the individual [or entity] no longer exist," and that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice."   Laborers' Pension Fund v. Lay-Com, Inc., 580 F.3d 602, 610 (7th Cir. 2009) (citing Hystro Prods, Inc. v. MNP Corp. 18 F.3d 1384, 1388-89 (7th Cir. 1994)).   Courts typically look to factors such as inadequate capitalization, comingling of funds, failure to observe corporate formalities, and insolvency of the debtor corporation to determine whether an individual is the alter-ego of the defendant corporation.   Fontana v. TLD Builders,

6

Inc., 362 Ill. App.3d 491, 503 (2nd Dist. 2005).   Here, the Company was undercapitalized resulting in frequent nonpayment or late payment of wages.   Clark also failed to observe corporate formalities: Clark received no salary (although his wife, who was not an employee, received a salary) and Clark used the Company's funds as his personal checking account for groceries and family vacations.   Clark is the alter ego of the Company and thus personally liable.

The funds are entitled to summary judgment because they have presented an "apparently sound accounting," and defendants have failed to provide rebutting evidence.   Plaintiffs are entitled to summary judgment in the amount of $3,155,476.07 for principal contributions and delinquencies, penalties, audit costs, and interest.

<u>**CONCLUSION**</u>

For the reasons stated above, plaintiffs' motion for summary judgment on Counts I and II [Doc. 102] is granted.   This leaves only Count III for fraud against Clark remaining in the case. The parties are directed to file a joint status report for Count III by April 26, 2021.[1]

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: March 29, 2021**

---

[1] The court will address plaintiffs' request for attorneys' fees and costs at the conclusion of the litigation.

7